IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

LOIS E. KINGSLEY,                    )
                                     )
                    Plaintiff,       )
                                     )
v.                                   )          No. CIV-05-341-C
                                     )
THE CITY OF OKLAHOMA CITY,           )
et al.,                              )
                                     )
                    Defendants.      )

## MEMORANDUM OPINION & ORDER

Defendant Juan C. Gonzales has moved that all claims against him be dismissed. Plaintiff responded, arguing that with the exception of one claim, dismissal is not proper. For the reasons set out below, some of Plaintiff's claims against Gonzales will remain but others are dismissed.

## BACKGROUND

Since November 1999, Plaintiff has worked primarily as an Accountant Technician for Central Oklahoma Transportation and Parking Authority, a public trust. During that time, Gonzales, an employee of the City of Oklahoma City (the City), was her immediate supervisor. Plaintiff claims that beginning in late September 2000, Gonzales began to sexually harass her and created a sexually hostile working environment. "Specifically, . . . Gonzales sent Plaintiff sexually explicit graphic emails, sent Plaintiff pornographic emails, made sexual remarks to Plaintiff, and touched Plaintiff in a sexually inappropriate manner." (Amend. Compl. ¶ 10.) Plaintiff allegedly told Gonzales that his conduct was unwelcome, complained to other employees, and reported Gonzales' "sexually inappropriate behavior to

management" in 2000/2001 and "continuing" through 2003.  She claims that no corrective

action was taken despite the fact that hers was not the first complaint.  (Id. ¶¶ 11-12.)  Prior

to her first complaint, Plaintiff had received a "commendable" evaluation from Gonzales (in

December 2000).  In January 24, 2002, however, Gonzales gave her a one-step lower rating

of "fully competent," noting a "personality" issue.  In March 2002, Gonzales issued Plaintiff

a letter of warning, threatening termination, and in September 2002, he removed duties from

her area of responsibility.

Plaintiff claims that Gonzales' sexual harassment continued through January 6, 2003,

when she received "another sexually explicit email" from him.  (Id. ¶ 16.)  In a subsequent

performance review (on January 27), Plaintiff was again rated "fully competent."  Plaintiff

apparently complained about this rating and indicated (at least to Gonzales but possibly to

others as well) that she believed her performance rating was retaliatory.  (See id. ¶ 17 ("And,

in response [to her evaluation], Plaintiff attached the January 6, 2003 email from Defendant

Gonzales as well as her notes complaining about the January 6, 2003 email.  Defendant

Gonzales admitted to sending the email to Plaintiff, but stated that the email must have been

sent to Plaintiff 'by mistake.'"))

In May, Plaintiff received a three-day suspension without pay due to a "behavior"

issue at the behest of Gonzales and two others within the "chain of command."  (Id. ¶ 8 &

18.)  She claims that she was not given notice or a hearing, as required by the Employee

Manual, and that her request for an appeal has gone unanswered.  In addition, Plaintiff claims

that Gonzales and another supervisor "solicited comments from employees and vendors

about Plaintiff in an attempt to substantiate unlawful disciplinary action they wished to impose upon" her.  (Id. ¶ 20.)

Plaintiff filed her complaint in this action on March 28, 2005.  She asserted claims against Gonzales for: (1) sexual harassment in violation of her Fourteenth Amendment Equal Protection rights, pursuant to 42 U.S.C. § 1983; (2) retaliation for exercising her First Amendment right to free speech, pursuant to § 1983; (3) assault; and (4) intentional infliction of emotional distress.  Plaintiff, through a private process server, made several attempts to serve Gonzales but was unsuccessful.  Plaintiff's counsel also contacted attorneys for the City, Gonzales' former employer, in an effort to locate him.  On July 1, 2005, Plaintiff filed an amended complaint, adding an additional claim of negligent infliction of emotional distress (and another against the City for negligent retention and supervision).  Gonzales was ultimately served with a summons and a copy of the original complaint on September 9, 2005.

## STANDARD OF REVIEW

A cause of action is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) only if it appears beyond doubt that the claimants can prove no set of facts in support of their claim that would entitle them to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  In deciding whether plaintiff fails to state claims on the grounds asserted, the Court accepts as true all well-pleaded facts and draws all reasonable inferences in plaintiff's favor. See, e.g., Williams v. Meese, 926 F.2d 994, 997 (10th Cir. 1991).  The Court's role is not to "'weigh potential evidence that the parties might present at trial, but to assess whether [the

plaintiff's] complaint alone is legally sufficient to state a claim for which relief may be granted.'" County of Santa Fe v. Public Serv. Co., 311 F.3d 1031, 1035 (10th Cir. 2002) (quoting Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991)).  A complaint may be dismissed for failure to state a claim "only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle her to relief." Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, 927 F.2d 1111, 1115 (10th Cir. 1991).

In addition, Rule 12(b) permits a defendant to include in a pre-answer motion to dismiss an objection to the sufficiency of process (subsection(4)) and/or to the sufficiency of service of process (subsection (5)).

> An objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service.  Technically, therefore, a Rule 12(b)(4) motion is proper only to challenge noncompliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons.  A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint.  Other than those cases in which it is confused with a motion under Rule 12(b)(5), a motion under Rule 12(b)(4) is fairly rare.

5B Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1353 (3d ed. 2006) (footnotes omitted).  Factual questions raised by affidavits or otherwise on a Rule 12(b)(4) or (5) motion should, to the extent that they are not intertwined with the merits,  be determined in accordance with Rule 12(d).  Id.

## DISCUSSION

Gonzales' arguments for why the claims against him should be dismissed and Plaintiff's response are addressed below.

1.      Sufficiency of Process/Service

Gonzales complains that he was not properly served on September 9, 2005, because the original complaint had been filed more than 120 days earlier and he was given a copy of the original complaint rather than the amended complaint, which had been filed on July 1. In addition, Gonzales complains that service was not even attempted until after the statute of limitations on Plaintiff's claims had run.

The Court begins with the argument that Plaintiff's claims should be dismissed because Gonzales was not served within 120 days after the complaint was filed.  Rule 4(m) provides:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Because Gonzales was named in the original complaint, the filing of an amended complaint did not restart the 120-day period.  Bolden v. City of Topeka, 441 F.3d 1129, 1148 (10th Cir. 2006).  Thus, the question is whether Plaintiff's failure to effect service within the time specified warrants dismissal.  Under Rule 4(m), a plaintiff who shows "good cause" for the delay is entitled to a mandatory extension of time to effect service.  Espinoza v. United States, 52 F.3d 838, 841 (10th Cir. 1995).  However, even absent a showing of good cause, the trial court must still consider whether a permissive extension is warranted.  Id.

There is no evidence presented that Gonzales was evading service; nevertheless, the Court finds that Plaintiffs' efforts to locate and serve him within the 120-day period and the lack of any demonstrable prejudice to Gonzales would have permitted the Court to permit a limited extension of time to effect service. Cf. Hendry v. Schneider, 116 F.3d 446, 449 n.2 (10th Cir. 1997) (holding that evasion of service constitutes good cause); Despain v. Salt Lake Area Metro Gang Unit, 13 F.3d 1436, 1439 (10th Cir. 1994) (explaining that neither actual notice nor lack of prejudice alone equates to good cause). Here, Plaintiff located and attempted service on September 9, which is long after the 120 days had expired.

The more problematic issue, and one that is not fully addressed by the parties, is not the belated service but the fact that Gonzales, on September 9, was not given the amended complaint with the summons. Rule 4(c)(1) states that summons shall be served together with a copy of the complaint. Because an amended complaint supersedes the original (rendering it a legal nullity), a defendant who has not yet been served at the time of the amendment should be served with a summons and a copy of the *amended* complaint. 27A Federal Procedure § 62:264 (Lawyers ed. June 2006). The Court thus interprets Gonzales' motion as challenging the sufficiency of service under Rule 12(b)(5) because he was given the summons and a superseded pleading.[1]

---

[1] Gonzales identifies Rule 12(b)(2) as support for his motion. However, there does not appear to be any question as to the existence of personal jurisdiction apart from the sufficiency of service challenge identified above. Cf. Harbour v. Peters, No. 05-1252-MLB, 2006 WL 219914, at *2 (D. Kan. Jan. 27, 2006) ("Valid service of process is a prerequisite to a federal court's asserting personal jurisdiction over a defendant.") Gonzales' reference to Rule 12(b)(4) appears to have been in error. (Def.'s Mot. at 1.)

It is Plaintiff's burden to establish the validity of service of process.  FDIC v. Oaklawn Apartments, 959 F.2d 170, 174 (10th Cir. 1992).  Here, the returned and executed summons clearly shows that Gonzales was given the original complaint rather than the complaint.  (Dkt. No. 45.)  Therefore, service was defective.

However, the Court will not dismiss the claims due to defective service because to do so would be wasteful and fail to serve any practical purpose.[2]  The amended complaint, which counsel received, did not alter the factual allegations and added only one additional claim against Gonzales that is closely related to the claims asserted in the original complaint. Furthermore, Plaintiff could re-file her remaining claims without encountering a new statute of limitations problem.[3]

---

[2]  The Court has broad discretion to dismiss a complaint for improper service.  See James v. Booz-Allen & Hamilton, Inc., 206 F.R.D. 15, 18 (D.D.C. 2002).  When a reasonable prospect exists that proper service can be obtained, quashing the service and directing that proper service be effected within a set period is preferable.  See id.  Gonzales does not ask the Court to quash service.

[3]  The timeliness § 1983 claims are measured by Oklahoma's statute of limitations for personal injury actions and by application of the state's tolling rules and savings provision.  Brown v. Hartshorne Pub. Sch. Dist. No. 1, 926 F.2d 959, 962 (10th Cir. 1991).  Oklahoma law affords plaintiffs an additional year if they *filed* a timely action that was subsequently dismissed other than on the merits.  12 Okla. Stat. § 100; see also Ross v. Kelsey Hayes, Inc., 1991 OK 83, 825 P.2d 1273, 1277; Vinyard v. Smith, 1991 OK CIV APP 13, 810 P.2d 832 (explaining that operation of § 100 does not depend on whether the plaintiff had exercised due diligence in attempting, but failing, to obtain service in the original action).  Thus, that savings provision would apply to all of Plaintiff's claims, including negligent infliction of emotional distress, since the factual predicate for that claim was laid in the original complaint, see Chandler v. Denton, 1987 OK 38, ¶ 13, 741 P.2d 855, 863, because dismissal under Rule 4(m) is without prejudice.  The effect of such application is that Plaintiff's claims against Gonzales would be no less timely, if she promptly re-filed them, than they were when the original complaint was filed in March 2003.

2.      Negligent Infliction of Emotional Distress

Gonzales argues that the state law negligent infliction of emotional distress claim against him should be dismissed pursuant to the Oklahoma Governmental Tort Claims Act (the GTCA).[4]  Under the GTCA, the City, as Gonzales' employer, is exclusively liable for any loss resulting from torts he committed while acting within the scope of his employment. 51 Okla. Stat. § 153; 51 Okla. Stat. § 152 (defining "political subdivision" to include municipalities).

> "Scope of employment" means performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority including the operation or use of an agency vehicle or equipment with actual or implied consent of the supervisor of the employee, but shall not include corruption or fraud.

51 Okla. Stat. § 152(9).  Thus, an employee does not act within the scope of his employment if he "acted maliciously or in bad faith."  Pellegrino v. State ex rel. Cameron Univ., 2003 OK 2, ¶ 4, 63 P.3d 535, 537.

Plaintiff makes no explicit allegation that Gonzales was acting outside the scope of his employment or that he acted in a corrupt or fraudulent manner or in bad faith.  However, elsewhere(in Counts II and III), she avers to Defendants' conduct as "willful and malicious" as part of a request for punitive damages.  In addition, the actions allegedly taken by Gonzales might have been outside the scope of his employment.  See Nail v. City of Henryetta, 1996 OK 12, 911 P.2d 914, 917-18 (explaining that the doctrine of respondeat

---

[4]  Gonzales also moved for dismissal of Plaintiff's assault claim, which Plaintiff concedes in her Response.  (Pl.'s Resp. at 8 n.3.)  Therefore, the assault claim against Gonzales is dismissed.

superior applies to the GTCA and that whether an act was within the scope of employment is normally one for the jury); Booker v. GTE.net LLC, 350 F.3d 515 (6th Cir. 2003) (determining that, under the particular circumstances and Kentucky law, employee's offensive e-mail to customer was outside the scope of his employment for purposes of imposing vicarious liability on employer).  Therefore, Gonzales' motion is denied with respect to the negligent infliction of emotional distress claim.

3.     Section 1983 Claims:  Statute of Limitations

Gonzales contends that both the sexual harassment and retaliation claims are untimely. The Court does not agree.  Where a complaint shows on its face that the applicable statute of limitations has expired, dismissal for failure to state a claim is appropriate.  Aldrich v. McCulloch Props., Inc., 627 F.2d 1036, 1041 n.4 & 1042 (10th Cir. 1980).  A two-year statute of limitations applies to Plaintiff's § 1983 claims, meaning that she had two years from the date her cause of action accrued to file an action.  See 12 Okla. Stat. § 95(3); Meade v. Grubbs, 841 F.2d 1512, 1522 (10th Cir. 1988).

With respect to the § 1983 sexual harassment claim, the most recent specific allegation of harassment (the January 6, 2003, e-mail) occurred more than two years before the original complaint was filed.  However, Plaintiff also alleges that the harassment was continuing and consisted of e-mails, remarks, *and* touching.  Thus, the Court cannot determine on the face of the amended complaint that nothing that might constitute sexual harassment occurred within the statute of limitations period.

In addition, with respect to the § 1983 first amendment retaliation claim, Plaintiff alleges that she was retaliated against in May 2003 for having complained about the January 6 e-mail and Gonzales' allegedly inappropriate behavior. Therefore, Plaintiff has pleaded actionable claims for sexual harassment and retaliation, under § 1983, for statute of limitations purposes.

4.     Section 1983 Claims:  Qualified Immunity

Gonzales argues that the § 1983 claims should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted on the basis of qualified immunity.  Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The first inquiry on a qualified immunity defense is whether the allegations, if true, would amount to a constitutional violation.  See Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 516 (10th Cir. 1998).  The second is whether a reasonable person in the defendant's position would have known that his conduct violated that right.  Id.

"Unlike other affirmative defenses, qualified immunity is not merely a defense to liability; it is also an immunity from suit."  Sawyer v. County of Creek, 908 F.2d 663, 665 (10th Cir. 1990) .  "In the context of a 12(b)(6) motion to dismiss, [the Court's] review of the qualified immunity defense is limited to the pleadings." Neiberger v. Hawkins, 6 Fed. Appx.

683, 686 (10th Cir. 2001).[5]  Although "mere conclusionary allegations without specific facts will not defeat the defense of qualified immunity," a per se heightened pleading standard does not apply to § 1983 claims.  <u>Id.</u>  The Court must, as is customary on a Rule 12(b)(6) motion, construe the allegations and draw any reasonable inferences in Plaintiff's favor.  <u>Id.</u>  The challenged § 1983 claims are discussed separately below.[6]

     A.     First Amendment Retaliation

     "[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."  <u>Garcett v. Ceballos</u>, ___ U.S. ___, 126 S. Ct. 1951, 1957 (2006).  A public employee's claim that she was retaliated against in violation of the first amendment is evaluated according to a four-step test.  The Court first determines whether the speech involved a matter of public concern, which is a legal question.  <u>Dill v. City of Edmond</u>, 155 F.3d 1193, 1201 (10th Cir. 1998); <u>Gardetto v. Mason</u>, 100 F.3d 803, 811 (10th Cir. 1996).  Matters of public concern are those which can "be fairly considered as relating to any matter of political, social, or other concern to the community."  <u>Connick v. Myers</u>, 461 U.S. 138, 147 (1983); <u>see also</u> <u>Prager v. LaFaver</u>, 180 F.3d 1185, 1190 (10th Cir.1999) ("'Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of [public] officials, in terms of content, clearly concerns

---

    [5] Citation to unpublished cases is in accordance with Tenth Circuit Rule 36.3.

    [6] In her Response, Plaintiff briefly notes that Gonzales does not challenge her procedural due process claim.  (Resp. at 10 n.4.)  Although the factual allegations underlying such a claim are included in the amended complaint, Plaintiff does not clearly assert a Fourteenth Amendment Due Process violation as an enumerated count.

matters of public import.'" (citation omitted).)  "[T]he fundamental inquiry is whether the plaintiff speaks as an employee or as a citizen." <u>David v. City & County of Denver</u>, 101 F.3d 1344, 1355 (10th Cir. 1996).  To determine whether speech is directed at redressing a personal grievance, as opposed to a public issue or concern, the Court must consider the content, form, and context of any statement, based on the record as a whole, as well as the speaker's motive.  <u>Connick</u>, 461 U.S. at 147; <u>David</u>, 101 F.3d at 1356.

Gonzales argues that Plaintiff's allegations that she complained about her supervisor's sexual harassment of her are of a personal nature and not a matter of public concern.  The Court agrees.  In the amended complaint, Plaintiff alleges that, through 2003, she complained about Gonzales' alleged behavior to other employees and reported it to management. (Amend. Compl. ¶ 11.)  She also alleges that other employees complained about Gonzales' allegedly sexually inappropriate behavior.  Then, in January 2003, Plaintiff allegedly complained about the January 6 e-mail from Gonzales and her performance review rating. (<u>Id.</u> ¶ 17.)  It is not clear to whom Plaintiff's January 2003 complaint was addressed, but Gonzales allegedly responded.  It was after this complaint that Plaintiff was allegedly retaliated against in May 2003.

Plaintiff has not alleged facts that could make her complaint(s) about Gonzales a matter of public concern.  An employee's complaint that she has been sexually harassed often is a personal grievance and not speech on a matter of public concern.  <u>See</u> <u>David</u>, 101 F.3d at 1356.  References to the fact that other women were subjected to sexual harassment, without more, does not transform a personal complaint about sexual harassment into a matter

12

of public concern.  Woodward v. City of Worland, 977 F.2d 1392, 1404 (10th Cir. 1992).

Plaintiff does not allege that she referred to these other women in her complaints, nor does

she offer any other allegation that might suggest a non-personal motive or that the

harassment interfered with the performance of governmental responsibilities.  Cf. Worley v.

Bd. of County Comm'rs of Park County, 44 Fed. Appx. 892, 894 (10th Cir. 2002) (noting

that the plaintiff had alleged that other employees were subjected to harassment and her

reported attempts to provide sexual harassment training to employees implicated the

employer's performance of its governmental responsibilities).  As pleaded, the amended

complaint cannot be reasonably construed to suggest that her claims were aimed at anything

other than addressing a personal grievance about Gonzales' alleged sexual harassment of her

and giving her only a "fully competent" performance rating.[7]  Because the allegations could

not support the conclusion that Plaintiff spoke on matters of public concern, any retaliation

by Gonzales was not prohibited by the First Amendment and Gonzales is entitled to qualified

immunity on that ground.  Accordingly, Plaintiff's § 1983 First Amendment retaliation claim

is dismissed.

---

[7]  In her Response, Plaintiff asserts that her complaints voiced concerns about Gonzales'
sexual harassment of her *and others* during working hours, his use of the City's computer to do so,
and the refusal of other city officials' to respond to reports of misconduct.  (Pl.'s Resp. at 12-14.)
The Court appreciates that "[e]xposing governmental inefficiency and misconduct is a matter of
considerable [public] significance."  Garcetti, ___ U.S. at ____, 126 S. Ct. at 1962.  However, these
allegations are not part of the amended complaint.

B.     Fourteenth Amendment Sexual Harassment

Gonzales also claims that he is entitled to qualified immunity with respect to the § 1983 Fourteenth Amendment claim because "[i]n light of the time period over which alleged conduct was said to have occurred that is insufficient as a matter of law to constitute unlawful sexual harassment" and that even if the conduct constituted sexual harassment, it is not severe or pervasive as a matter of law.  (Mot. at 13-14.)

These arguments might have merit if raised in the context of a motion for summary judgment.  However, the Court will not evaluate Plaintiff's claim as restricted to four e-mails on a motion to dismiss when she has alleged that the sexual harassment included remarks, e-mails, and touching, and was continuing.  These allegations, although general, are more than conclusory.  They are also sufficient to state a claim upon which relief might be granted.  Since Starrett v. Wadley, 879 F.2d 808, 814-15 (10th Cir. 1989), it has been established that sexual harassment by a person acting under color of state law that included sexual advances, touching, gestures, and harassment of other women, was a deprivation of a public employee's equal protection rights.   Because Plaintiff's allegations, if proven, could sustain the conclusion that Gonzales violated that clearly established right, his motion to dismiss this claim based on qualified immunity is denied.

## CONCLUSION

Accordingly, Defendant Juan C. Gonzales' Motion to Dismiss (Dkt. No. 44) is GRANTED in part and DENIED in part.  Plaintiff's claim against Gonzales for assault is dismissed with prejudice.  Plaintiff's claim against Gonzales under § 1983 for retaliation in

violation of her first amendment rights is dismissed without prejudice.  Further, Plaintiff's Counter-Motion to Strike Defendant's Footnotes 3 and 4 (Dkt. No. 46), to which Defendant was not permitted to respond, is STRICKEN as moot.  The Court did not consider those statements by counsel in reaching any decision announced herein.

IT IS SO ORDERED this 7th day of September, 2006.

ROBIN J. CAUTHRON
United States District Judge